515 So.2d 635 (1987)
Walter P. REED, as District Attorney of the 22nd Judicial District Court, Parish of Washington
v.
WASHINGTON PARISH POLICE JURY, et als.
No. CA 87 0551.
Court of Appeal of Louisiana, First Circuit.
October 14, 1987.
*636 Stephen J. Caire, Covington, for plaintiff-appellee Walter P. Reed, Dist. Atty.
John N. Gallaspy, Bogalusa, for defendant-appellant Washington Parish Police Jury.
Before WATKINS, SHORTESS and LANIER, JJ.
LANIER, Judge.
This is an action by a district attorney against a parish police jury seeking mandamus, injunction and declaratory relief to secure a $163,855.11 appropriation of funds from the parish police jury for the operation of the district attorney's office. The parish police jury filed a reconventional demand seeking declaratory relief that it had no mandatory duty to fund the district attorney's office. The trial court rendered judgment in favor of the district attorney, declaring that the police jury "is mandated by R.S. 16:6 to pay the reasonable expenses of the District Attorney enumerated therein, so long as it has sufficient income to pay all statutorily mandated expenses" and issued a writ of mandamus ordering the parish police jury to pay $96,854.56 to the district attorney. The trial court dismissed the parish police jury's reconventional demand. This suspensive appeal followed.

FACTS
Walter P. Reed, the District Attorney for the Twenty-Second Judicial District (District Attorney) submitted a request pursuant to La.R.S. 16:6 for $145,025 to the Washington Parish Police Jury (Police Jury) to be paid out of the 1986 Parish General Fund Budget. The Washington Parish General Fund is used to finance the following:
(1) Police Jury salaries, retirement, medical insurance, conferences and conventions, travel, liability and other insurance, dues, subscriptions and office supplies;
(2) juror and witness fees;
(3) expenses of the district judges;
(4) expenses of the District Attorney;
(5) expenses of the clerk of court;
(6) expenses of the juvenile officer;
(7) expenses of the court reporters;
(8) expenses of the Fourth Ward Marshall;
(9) expenses of the Fourth Ward Court;
(10) expenses of the registrar of voters;
(11) finance and administration expenses;
(12) expenses of the assessor;
(13) expenses of the sheriff;
(14) expenses of the coroner;
(15) expenses of the justices of the peace and constables;
(16) expenses of civil defense;
(17) sanitation expenses;
(18) salaries for the veterans service office;
(19) recreation expenses; and
(20) expenses of the parish farm agent.
For 1986, the Parish General Fund was budgeted for $1,741,730.83. The District Attorney's budget request was 8.3% of the total amount of the budget. The Police Jury budgeted $42,246.12 for the District Attorney. This constituted 2.4% of the total amount of the budget.
During 1986, the actual expenses of the District Attorney's office provided for in La.R.S. 16:6 were $141,925.43. The Police Jury actually paid $45,070.87[1] to the District Attorney's office for its 1986 La.R.S. 16:6 expenses. The total amount actually spent out of the Parish General Fund for 1986 was $1,728,223.33. Thus, the District Attorney's total actual La.R.S. 16:6 expenses were 8.2% of the total amount actually spent out of the Parish General Fund for 1986, and the amount actually paid to the District Attorney's office was 2.6% of *637 the total amount actually spent out of the Parish General Fund.
The 1986 La.R.S. 16:6 Washington Parish expenses of the District Attorney were paid from the following funds:

(1) Washington Parish Criminal Court Fund
(La.R.S. 15:571.11 [A][1][a])[2] $78,212.64
(2) District Attorney's 6% and Special Funds
(La.R.S. 15:571.11 [A][1][b] and [A][2])[3] 14,550.68
(3) District Attorney's Fee Fund (La.R.S.
16:15)[4] 4,091.24

*638
(4) Parish General Fund $45,070.87
 ___________
 TOTAL $141,925.43

The evidence reflects that in 1986 the District Attorney had the following revenue sources available to him in Washington Parish, in addition to the Parish General Fund:

(1) 6% Fund $131,466.90
(2) Fee Fund 47,294.24
(3) Special Account[5] 193,059.05
(4) 4-D Fund[6] 35,887.48
(5) Fee from the Washington Parish School
 Board 3,000.00
 ___________
 TOTAL $410,707.67

The record does not reflect the amount deposited in the Washington Parish Criminal Court Fund for 1986.[7]
The trial court described the problem in this case as follows:
It is apparent to me that the problem in this case arises from the fact that the former District Attorney, and the present District Attorney, during his first year in office, accepted the appropriation of funds by the Police Jury, and paid all other expenses from the Criminal Court Fund and other sources of revenue. What the Police Jury budgeted for 1986 was for expenses it had traditionally paid. On the other hand, the District Attorney, feeling that he could no longer properly fund his operations in Washington Parish without full compliance by the Police Jury with R.S. 16:6, requested payment of all expenses provided for in that statute. The dire financial circumstances of the Police Jury was the third ingredient which led to this law suit. It is unfortunate that the political process could not lead to a solution of what is a very real problem for both sides in this controversy.

DOES LA.R.S. 16:6 IMPOSE A MANDATORY DUTY ON POLICE JURIES?

(Assignment of Error No. 2)
The trial court ruled as follows:
Be that as it may, I think the law is clear that the Police Jury is mandated by law to pay the expenses outlined in R.S. 16:6, and equally clear that the District Attorney's request was reasonable. Since there were, in 1986, sufficient funds available to pay all statutorily mandated expenses in Washington Parish, and since these must be paid before other expenses can be paid, the Police Jury had a ministerial duty to pay those expenses. Its failure to do so makes it subject to the writ of mandamus to compel the payment of those items.
The Police Jury contends the trial court "erred in interpreting L.R.S. [sic] 16:6 as providing a mandate, enforceable by mandamus, calling for compulsory payment of the D.A.'s expenses from the Police Jury's general fund."
Whether La.R.S. 16:6 imposes a mandatory duty on the Police Jury or merely gives it the discretion to allocate funds for payment of the District Attorney's expenses determines whether the District Attorney is entitled to the relief of mandamus. *639 In D'Agostino v. City of Baton Rouge, 504 So.2d 1082, 1083 (La.App. 1st Cir.1987), appears the following:
La.C.C.P. art. 3861 defines `mandamus' as a writ directing a public officer or a corporation or an officer thereof to perform any of the duties set forth in arts. 3863 and 3864. A writ of mandamus may be issued in all cases where the law provides no relief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice. La. C.C.P. art. 3862. A writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law. La.C.C.P. art. 3863.
Mandamus is an extraordinary remedy which is used sparingly by the courts; there must be a clear and specific legal duty which ought to and can be performed. Felix v. St. Paul Fire and Marine Ins. Co., 477 So.2d 676 (La.1985). Mandamus will not lie in matters in which discretion and evaluation of evidence may be exercised. Elliott v. East Carroll Parish Police Jury, 421 So.2d 1196 (La.App. 2nd Cir. 1982); Messer v. Department of Corrections, Louisiana State Penitentiary, 385 So.2d 376 (La.App. 1st Cir.), writ denied, 386 So.2d 1379 (La.1980).
La.R.S. 16:6 presently provides as follows:
Reimbursement for expenses; payment by police juries
The district attorneys of this state, the parish of Orleans excepted, shall be entitled to an expense allowance for salaries of stenographers, clerks and secretaries, and salaries or charges for special officers, investigators and other employees and an expense allowance for stationery forms, telephone, transportation, travel, postage, hotel and other expenses incurred in the discharge of their official duties.

The police juries of the various parishes of the state of Louisiana are hereby authorized to pay from their general fund any of the items of expense, as provided for herein, incurred by the several district attorneys of this state when acting in their official capacities. [Emphasis added.]
The language of this statute is susceptible to two interpretations. When used in the revised statutes, the word "shall" is mandatory and the word "may" is permissive. La.R.S. 1:3. The first paragraph of La.R.S. 16:6 provides that "district attorneys ... shall be entitled to an expense allowance for ... expenses incurred in the discharge of their official duties." [Emphasis added.] However, the second paragraph provides that "police juries ... are hereby authorized to pay from their general fund any of the items of expense ... incurred by the several district attorneys ... when acting in their official capacities." [Emphasis added.] The word "shall" in the first paragraph of La.R.S. 16:6 must be construed as being mandatory. However, this paragraph merely mandates the establishment of an expense allowance for the district attorney; it does not provide how much that allowance should be or by whom the allowance, or any portion thereof, should be paid. The second paragraph provides the police juries are authorized to pay any of the expense allowance of the district attorneys. As indicated by the authorities cited by the parties in brief and by the trial court, the word "authorized" is susceptible of two meanings: one mandatory and one permissive.
Determining the true intent of La. R.S. 16:6 is a question of statutory construction and interpretation. In Bunch v. Town of St. Francisville, 446 So.2d 1357, 1360 (La.App. 1st Cir.1984), the following pertinent rules of statutory construction and interpretation are set forth:
When a law or ordinance is clear and free from all ambiguity, it must be given effect as written. ...
When interpreting a law (ordinance), the court should give it the meaning the lawmaker intended. It is presumed that every word, sentence or provision in the law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were used. Conversely, it will not be presumed that *640 the lawmaker inserted idle, meaningless or superfluous language in the law or that it intended for any part or provision of the law to be meaningless, redundant or useless. The lawmaker is presumed to have enacted each law with deliberation and with full knowledge of all existing laws on the same subject. The meaning and intent of a law is to be determined by a consideration of the law in its entirety and all other laws on the same subject matter, and a construction should be placed on the provision in question which is consistent with the express terms of the law and with the obvious intent of the lawmaker in enacting it. Where it is possible to do so, it is the duty of the courts in the interpretation of laws to adopt a construction of the provision in question which harmonizes and reconciles it with other provisions. A construction of a law which creates an inconsistency should be avoided when a reasonable interpretation can be adopted which will not do violence to the plain words of the law and will carry out the intention of the lawmaker.

. . . . .
When the expressions of a law are `dubious', the most effectual way of discovering the true meaning of the law is to consider the reason and spirit of it, or the cause which induced the lawmaker to enact it. ... When a law is susceptible to two or more interpretations, that which affords a reasonable and practical effect to the entire act is to be preferred over one which renders part thereof ridiculous or nugatory.
As indicated, one of the most important rules of statutory construction is that a statute should be given the meaning intended by the lawmakers. The legislative history of a statute is very useful in ascertaining its meaning.
Prior to 1959, La.R.S. 16:6 provided as follows:
The district attorneys of this state, the Parish of Orleans excepted, shall be entitled to an expense allowance for salaries of stenographers, clerks, special officers, stationery, telephone, hotel and other expenses incurred in the discharge of their official duties.
For these purposes there is created an expense allowance of twenty-five hundred dollars per year, payable monthly upon warrant of the district attorney.
Although this statute provided for payment of certain enumerated expenses, it also provided for payment of "other expenses incurred in the discharge of their official duties." Under this statute, the expenses of the district attorney's office were funded by the state in the amount of $2,500 per annum. In 1959, La.R.S. 16:6 was amended and reenacted by Act 113 to provide as follows:
The district attorneys of this state, the Parish of Orleans excepted, shall be entitled to an expense allowance for salaries of stenographers, clerks and secretaries, and salaries or charges for special officers, investigators or other employees and an expense allowance for stationery, forms, telephone, transportation, travel, postage, hotel and other expenses incurred in the discharge of their official duties.

For the purposes provided for in the preceding paragraph there is hereby created an expense allowance of five thousand dollars per annum for each of the district attorneys of the state of Louisiana payable monthly upon warrants drawn by the district attorney upon the treasurer of the state of Louisiana; and in addition thereto, the police juries of the various parishes of the state of Louisiana are hereby authorized to supplement and pay from their general fund any of the items of expense, as provided for herein, incurred by the several district attorneys of this state when acting in their official capacities and where the total items of expense in the operation of the district attorney's office exceed the amount of five thousand dollars per year. [Emphasis added.]
The pertinent features of this amendment were that (1) it increased state funding of the district attorney's expenses from $2,500 to $5,000 per annum, and (2) it authorized the police juries to supplement *641 and pay from their general funds any item of expense "where the total items of expense in the operation of the district attorney's office exceed the amount of five thousand dollars per year."
In 1959, the Criminal Court Fund statute, La.R.S. 15:571.11 was amended and reenacted by Act 8 to provide, in pertinent part, as follows:
All fines and forfeitures imposed by district courts in criminal cases and prosecutions, the parish of Orleans excepted, shall, upon collection by the sheriff or executive officer of the court, be paid into the treasury of the parish in which the court is situated and shall be used in defraying the expenses of the criminal courts of the parish; provided, however, that the sheriffs throughout the state, the parish of Orleans excepted, shall retain ten (10) per cent of the amount of fines collected or the amount of bonds forfeited to go into the Sheriff's Salary and Expense Fund.
However, the very next year, by Act 236 of 1960, La.R.S. 15:571.11 was amended to provide, in pertinent part, as follows:
All fines and forfeitures imposed by district courts and district attorneys' conviction fees in criminal cases and prosecutions, the parish of Orleans excepted, upon collection by the sheriff or executive officer of the court, shall be paid into the treasury of the parish in which the court is situated and deposited in a special `Criminal Court Fund' account, which shall be used or paid out in defraying the expenses of the criminal courts of the parish as provided in R.S. 13:692 and 13:1587 and R.S. 16:6, upon motion by the district attorney and approval order of the district judge, provided, however, that the sheriffs throughout the state, the parish of Orleans excepted, shall retain ten percent of the amount of fines collected or the amount of bonds forfeited to go into the sheriff's salary and expense fund. [Emphasis added.]
Act 236 of 1960 authorizes the payment of the district attorney's expenses provided for in La.R.S. 16:6 out of the Criminal Court Fund established by La.R.S. 15:571.11. As previously indicated, La.R.S. 16:6 and 15:571.11 must be construed in pari materia and in such a way that harmonizes their provisions. If La.R.S. 16:6 (as it existed after Act 236 of 1960) is interpreted as imposing a mandatory duty on a police jury to fund the expenses of the district attorney's office in excess of $5,000, then why was La.R.S. 15:571.11 amended in 1960 to authorize payment of those same expenses out of the Criminal Court Fund? Certainly, the lawmakers did not intend that district attorneys would get double funding for their expenses. Such a construction is not reasonable and must be rejected. Thus, the only reasonable construction that can be given these statutes at this point in time is that La.R.S. 16:6 gave discretionary authority to police juries to fund the district attorney's expenses exceeding $5,000, and La.R.S. 15:571.11 authorized these excess expenses to be paid by the Criminal Court Fund if a police jury did not do so.
La.R.S. 16:6 was amended into its present form by Act 115 of 1973. Act 115 only made one change in the first paragraph of La.R.S. 16:6; it substituted the word "and" for the word "or" after the word "investigators". Act 115 rewrote the second paragraph of La.R.S. 16:6 to delete the $5,000 payment by the state for the expenses of the district attorneys.
In the following year, by Act 238 of 1974, La.R.S. 15:571.11 was amended to provide, in pertinent part, as follows:
All fines and forfeitures imposed by district courts and district attorneys conviction fees in criminal cases and prosecutions, upon collection by the sheriff or executive officer of the court, shall be paid into the treasury of the parish in which the court is situated and deposited in a special `Criminal Court Fund' account, which, on motion by the district attorney and approval order of the district judge, may be used or paid out in defraying the expenses of the criminal courts of the parish as provided in R.S. 13:692 and 13:1587 and R.S. 16:6, in defraying the expenses of those courts in recording and transcribing of testimony, *642 statements, charges and other proceedings in the trial of indigent persons charged with the commission of felonies, in defraying their expenses in the preparation of records in appeals in such cases, for all expenses and fees of the petit jury and grand jury, for witness fees, for attendance fees of the sheriff and clerk of court, for costs and expenses of a parish law library, for expenses and fees of attorneys appointed to represent indigent persons under any public defender program, and for other expenses related to the judges of the criminal courts and the office of the district attorney; provided, however, that the sheriffs throughout the state, the parish of Orleans excepted, shall retain twelve percent of the amount of fines collected or the amount of bonds forfeited to go into the sheriff's salary and expense fund in each parish; and further provided, however, that an additional six percent of the amount of fines collected and the amount of bonds forfeited shall be transmitted to the district attorney of the judicial district to be used by the district attorney in defraying such expenses of his office as in his discretion may be necessary. [Emphasis added.]
Act 238 of 1974 continued the authority to pay La.R.S. 16:6 expenses out of the Criminal Court Fund, specifically provided that "other expenses related to ... the office of the district attorney" could be paid out of the Criminal Court Fund and gave the district attorneys a separate fund comprised of 6% of all fines collected and bonds forfeited "to be used by the district attorney in defraying such expenses of his office." [Emphasis added.] Essentially, the pertinent language emphasized above is still in effect, except that the District Attorney's 6% Fund was increased to a 12% fund by Act 956 of 1986.[8]
When Act 115 of 1973 (amending La.R.S. 16:6) and Act 238 of 1974 (amending La.R. S. 15:571.11) are read in pari materia, it appears that it was not the intent of the lawmakers to make funding of the district attorney's expenses by police juries under La.R.S. 16:6 mandatory. If the lawmakers intended that police juries were mandated to pay all of the district attorneys' "expenses incurred in the discharge of their official duties", why would the lawmakers also provide for payment of these expenses out of the Criminal Court Fund and, in addition to that, give each district attorney 6% of all fines and bond forfeitures collected for "defraying such expenses of his office"? The purpose of this legislation is to properly fund the expenses of the district attorney's office, not to create a surplus of funding for the district attorney to the detriment of the governmental services funded by the general funds of the various parish police juries.
Subsequent legislation serves to support the correctness of this construction and interpretation. By Act 293 of 1986,[9] the district attorney has been given a $10 court cost "against every defendant who is convicted after trial or after he pleads guilty or who forfeits his bond", which sum is to be used "in defraying expenses of his office." By Act 956 of 1986, the district attorney's 6% fund has been doubled to a 12% fund. If it were intended that police juries were mandated by La.R.S. 16:6 to fund the district attorneys' "expenses incurred in the discharge of their official duties", why was this additional funding necessary and/or for what purpose would this money be spent if not for expenses incurred in the discharge of official duties?
After carefully studying the language of La.R.S. 16:6, after reviewing the legislative histories of La.R.S. 16:6 and 15:571.11 and after considering other laws pertaining to the same subject matter, we conclude that the only reasonable and practical interpretation that can be given to La.R.S. 16:6 is that it gives discretionary authority to police juries to allocate money from their general funds to pay expenses for the district attorneys' offices. La.R.S. 16:6 does not create a mandatory duty, and the District Attorney is not entitled to a writ of *643 mandamus. The trial court erred by rendering a judgment granting a writ of mandamus, and that judgment must be reversed. The Police Jury is entitled to judgment in its favor on its reconventional demand.
This assignment of error has merit.[10]

DECREE
For the foregoing reasons, the judgments of the trial court in favor of the District Attorney and against the Police Jury are reversed. Judgment is rendered on the main demand in favor of the Police Jury, vacating the writ of mandamus and dismissing the petition therefor. Judgment is rendered on the reconventional demand in favor of the Police Jury, declaring that La.R.S. 16:6 does not impose a mandatory duty on the Police Jury to fund the expenses of the District Attorney's office. The District Attorney is cast for all costs in the sum of $110.
REVERSED AND RENDERED.
NOTES
[1] Plaintiff's exhibit 1 shows actual 1986 General Fund payments to the District Attorney's office of $45,070.87. Plaintiff's exhibit 2 shows actual 1986 General Fund payments to the District Attorney's office of $46,222.79. The trial court apparently used the $45,070.87 figure in making its calculations, and the Police Jury has not assigned this as error.
[2] La.R.S. 15:571.11 [A] presently provides as follows:

(1)(a) All fines and forfeitures imposed by district courts and district attorneys conviction fees in criminal cases and prosecutions for violations of state law or parish ordinances, upon collection by the sheriff or executive officer of the court, shall be paid into the treasury of the parish in which the court is situated and deposited in a special `Criminal Court Fund' account, which, on motion by the district attorney and approval order of the district judge, may be used or paid out in defraying the expenses of the criminal courts of the parish as provided in R.S. 13:1587 and R.S. 16:6, in defraying the expenses of those courts in recording and transcribing of testimony, statements, charges and other proceedings in the trial of indigent persons charged with the commission of felonies, in defraying their expenses in the preparation of records in appeals in such cases, for all expenses and fees of the petit jury and grand jury, for witness fees, for attendance fees of the sheriff and clerk of court, for costs and expenses of a parish law library, for expenses and fees of attorneys appointed to represent indigent persons under any public defender program, and for other expenses related to the judges of the criminal courts and the office of the district attorney; however,
(b) The sheriffs throughout the state, the parish of Orleans excepted, shall retain twelve percent of the amount of fines collected or the amount of bonds forfeited to go into the sheriff's general fund in each parish; and, an additional twelve percent of the amount of fines collected and the amount of bonds forfeited shall be transmitted to the district attorney of the judicial district to be used by the district attorney in defraying such expenses of his office as in his discretion may be necessary.
(2) All fines and forfeitures imposed by district courts and collected by the sheriff or executive officer of the court for violations of municipal ordinances shall be disbursed as follows:
(a) Twelve percent thereof shall be remitted to the office of the district attorney;
(b) Twelve percent shall be remitted to the sheriff's general fund; and
(c) The remainder shall be transmitted to the municipality for deposit in its treasury.
[3] See footnote 2. Act 956 of 1986 increased the District Attorney's percentage in La.R.S. 15:571.11(A)(1)(b) and (A)(2) from 6% to 12%. The record is not clear about what "special" funds are included in this account.
[4] La.R.S. 16:15, entitled "District Attorneys Worthless Check Collection Fees", provides as follows:

A. A district attorney may collect a fee whenever his office collects and processes a check, draft, or order for the payment of money upon any bank or other depository, if the check, draft, or order for payment of money on any bank or depository:
(1) Has been issued in a manner which makes the issuance an offense under R.S. 14:71; or
(2) Has been forged under R.S. 14:72.
B. The district attorney may collect the fee authorized by this Section from any person who is a principal to the offense described in Subsection A of this Section.
C. The amount of the fee shall not exceed:
(1) Ten dollars, if the face amount of the check, draft, or order for the payment of money does not exceed ten dollars.
(2) Twenty Dollars, if the face amount of the check, draft, or order for the payment of money is greater than ten dollars but does not exceed one hundred dollars.
(3) Sixty dollars, if the face amount of the check, draft, or order for the payment of money is greater than one hundred dollars but does not exceed three hundred dollars.
(4) One hundred dollars, if the face amount of the check, draft, or order for the payment of money is greater than three hundred dollars but does not exceed five hundred dollars.
(5) One hundred fifty dollars, if the face amount of the check, draft, or order for the payment of money is greater than five hundred dollars.
(D) If the person from whom the fee is collected was a principal to the offense of forgery, under R.S. 14:72, committed by altering the face amount of the check, draft, or order for the payment of money, the face amount as altered governs for the purpose of determining the amount of the fee.
(E) Fees collected under this Section shall be deposited in a special fund to be administered by the district attorney. Expenditures from this fund shall be at the sole discretion of the district attorney and may be used only to defray the salaries and expenses of the office of the district attorney, but in no event may the district attorney supplement his or her own salary from this fund. Nothing in this Section shall be construed to decrease the total salaries, expenses, and allowances which the office of a district attorney is receiving at the time this Section takes effect.
Act 74 of 1986 increased the amount of the fees the district attorney may charge, in par. (1) from "five dollars" to "ten dollars", in par. (2) from "ten dollars" to "twenty dollars", in par. (3) from "thirty dollars" to "sixty dollars", in par. (4) from "fifty dollars" to "one hundred dollars", and in par. (5) from "seventy-five dollars" to "one hundred dollars".
[5] The record does not reflect the source of the special account funds.
[6] The 4-D Fund consists of grants from the Louisiana Department of Health and Human Resources, authorized by Act 117 of 1975, to establish family and child support programs compatible with Title IV-D of the Social Security Act. The purpose of the fund is to enforce the support obligations owed by absent parents to their family and children, to locate absent parents, to establish paternity, and to obtain family and child support.
[7] Act 293 of 1986 enacted La.R.S. 16:16, which provides as follows:

Additional court costs to defray expenses
A. In all criminal cases over which the district attorney's office has jurisdiction, there shall be taxed as costs against every defendant who is convicted after trial or after he pleads guilty or who forfeits his bond a nonrefundable sum of ten dollars, which shall be in addition to all other fines, costs, or forfeitures lawfully imposed.
B. The sums collected under Subsection A of this Section shall be remitted monthly by the clerk's office to the office of the district attorney of the judicial district to be used at his discretion in defraying expenses of his office.
[8] See footnotes 2 and 3.
[9] See footnotes 7 for the text of this statute.
[10] Because we find merit to this assignment of error, it is unnecessary to address assignments of error 1 and 3 through 6.